**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| GOLD RESERVE INC., <br><br> Plaintiff, <br><br> v. <br><br> BOLIVARIAN REPUBLIC OF VENEZUELA, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )     Case No. 22-mc-00453-UNA |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF GOLD RESERVE INC.'S MOTION FOR A CONDITIONAL ORDER AUTHORIZING THE ISSUANCE OF A WRIT OF ATTACHMENT *FIERI FACIAS***

*OF COUNSEL*:

Matthew H. Kirtland
NORTON ROSE FULBRIGHT US LLP
799 9th Street NW, Suite 1000
Washington, DC 20001
Tel: (202) 662-0200
matthew.kirtland@nortonrosefulbright.com

Katherine G. Connolly
NORTON ROSE FULBRIGHT US LLP
555 California Street, Suite 3300
San Francisco, CA  94104
Fax: (628) 231-6799
katie.connolly@nortonrosefulbright.com

Dated: October 20, 2022

Matthew P. Ward (Del. Bar No. 4471)
Nicholas T. Verna (Del. Bar No. 6082)
WOMBLE BOND DICKINSON (US) LLP
1313 North Market Street, Suite 1200
Wilmington, DE 19801
Tel: (302) 252-4320
Matthew.Ward@wbd-us.com
Nick.Verna@wbd-us.com

*Attorneys for Plaintiff Gold Reserve Inc.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES...................................................................................................ii

INTRODUCTION ...............................................................................................................1

SUMMARY OF ARGUMENT .............................................................................................1

STATEMENT OF FACTS....................................................................................................2

   I.   ARBITRATION AWARD.........................................................................................2

   II.  DISTRICT OF COLUMBIA JUDGMENT ................................................................3

   III. REGISTRATION OF JUDGMENT...........................................................................3

   IV. THE CRYSTALLEX PROCEEDINGS .....................................................................4

   V.  THE OTHER VENEZUELA JUDGMENT CREDITORS .................................................5

   VI. EVENTS BETWEEN AUGUST 2018 AND APRIL 2021 .................................................7

   VII.   EVENTS BETWEEN APRIL 2021 AND OCTOBER 2022.........................................12

ARGUMENT......................................................................................................................12

   I.   THE FSIA JURISDICTIONAL REQUIREMENTS HAVE BEEN MET ........................12

      A.   An Exception to Jurisdictional Immunity Applies....................................................12

      B.   The Property At Issue Meets the Requirements for Attachment and Execution ........13

   II.  PDVSA IS AND AT ALL RELEVANT TIMES HAS BEEN VENEZUELA'S ALTER EGO ...................................................................................................................14

   III. IN THE ALTERNATIVE, THIS COURT'S FORTHCOMING DECISION WOULD COLLATERALLY ESTOP VENEZUELA AND PDVSA ON THE ALTER EGO ISSUE 16

   IV. PDVH'S SHARES MAY BE ATTACHED UNDER DELAWARE LAW .....................19

   V.  OFAC SANCTIONS DO NOT PREVENT PLAINTIFF'S REQUESTED RELIEF ........20

CONCLUSION....................................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*ACL1 Investments Ltd., et al. v. Bolivarian Republic of Venez.*,
  Case No. 21-mc-00046-LPS, D.I. 2 (D. Del. Nov. 22, 2021) ...................................................2

*Anderson v. Comm'r*,
  698 F.3d 160 (3d Cir. 2012) .................................................................................................18

*Bouriez v. Carnegie Mellon Univ.*,
  430 F. App'x 182 (3d Cir. 2011) ...........................................................................................16

*Burlington N. R. Co. v. Hyundai Merch. Marine Co.*,
  63 F.3d 1227, 1233 (3d Cir. 1995).........................................................................................18

*Caver v. City of Trenton*,
  420 F.3d 243 (3d Cir. 2005) ................................................................................................19

*Conn. Bank of Commerce v. Republic of Congo*,
  440 F. Supp. 2d 346 (D. Del. 2006) ......................................................................................12

*Crystallex Int'l Corp. v. Bolivarian Republic of Venez.* (the "*Aug. 2018 Crystallex Decision*"),
  333 F. Supp. 3d 380 (D. Del. 2018) ...............................................................................passim

*Crystallex Int'l Corp. v. Bolivarian Republic of Venez.* (the "*Crystallex Appeal*"),
  932 F.3d 126 (3d Cir. 2019) ..........................................................................................passim

*Crystallex Int'l Corp. v. Bolivarian Republic of Venez. (the "Jan. 2021 Crystallex Decision")*,
  2021 WL 129803, D.I. 234 (D. Del. Jan. 14, 2021).........................................................6, 14

*Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*,
  Case No 17-mc-151-LPS, (D. Del. Aug. 23, 2018).......................................................4, 17

*Crystallex Int'l Corp. v. PDV Holding Inc. (the "Dec. 2019 Crystallex Decision")*, 2019 WL
  6785504, D.I. 154 (D. Del. Dec. 12, 2019). ...........................................................................6

*Duvall v. Att'y. Gen. of United States*,
  436 F.3d 382 (3d Cir. 2006) .................................................................................................18

*Harrison v. Soroof Int'l, Inc.*,
  320 F. Supp. 3d 602 (D. Del. 2018) ......................................................................................16

*In re Brown*,
  951 F.2d 564 (3d Cir. 1991) .................................................................................................18

*In re Mullarkey*,
   536 F.3d 215 (3d Cir. 2008) ................................................................................................19

*Koch Minerals SÀRL, et al. v. Bolivarian Republic of Venez.*,
  Case No. 22-mc-00156, D.I. 2 (D. Del. Oct. 7, 2022) .........................................................2

*Montana v. United States*,
  440 U.S. 147 (1979)............................................................................................................18

*Nat'l Med. Imaging, LLC v. Ashland Funding LLC*,
  648 F. App'x 25 (3d Cir. 2016) ........................................................................................16, 17

*Nat'l R.R. Passenger Corp. v. Pennsylvania Pub. Util. Comm'n*,
   288 F.3d 519 (3d Cir. 2002) ...................................................................................19

*Northrop Grumman Ship Systems, Inc. v. The Ministry of Defense of the Republic of Venez.*,
   Case No. 20-mc-257-LPS, D.I. 3 (D. Del. Sept. 15, 2020) ........................................2

*Odhiambo v. Republic of Kenya*,
   764 F.3d 31 (D.C. Cir. 2014) ...................................................................................13

*OI European Group B.V. v. Bolivarian Republic of Venez.*,
   Case No. 19-mc-00290-LPS, D.I. 48 (D. Del. Feb. 19, 2021) ...................................1

*OI European Group B.V. v. Bolivarian Republic of Venez.*,
   Case No. 19-mc-290, Mem. Order, D.I. 114 (D. Del. May 4, 2022)..........................6

*OI European Group B.V. v. Bolivarian Republic of Venez.*,
   Case No. 19-mc-290, Joint Status Report, D.I. 119 (D. Del. Oct. 13, 2022) .............. 12, 15, 20

*Republic of Argentina v. Weltover, Inc.*,
   504 U.S. 607 (1992) ..........................................................................................12, 13

*Rubin v. The Islamic Republic of Iran*,
   637 F.3d 796 (7th Cir. 2011), as corrected (Apr. 1, 2011) ......................................14

*Rusoro Mining Ltd. v. Republic of Venez.*,
   Case No. 21-mc-00481-LPS, D.I. 2 (D. Del. Feb. 9, 2022) .......................................2

*Tauro v. Allegheny Cty.*,
   371 F. App'x 345 (3d Cir. 2010) ..............................................................................19

*Taylor v. Sturgell*,
   553 U.S. 880 (2008) .................................................................................................16

*UMS Partners, Ltd. v. Jackson*,
   1995 WL 413395 (Del. Super. Ct. June 15, 1995)....................................................19

*United States ex rel. Doe v. Heart Sol., PC*,
   923 F.3d 308 (3d Cir. 2019) .....................................................................................16

*United States v. Stauffer Chem. Co.*,
   464 U.S. 165 (1984) .................................................................................................17

*Wilmington Tr. Co. v. Barron*,
   470 A.2d 257 (Del. 1983).........................................................................................20

## Statutes

10 *Del. C.* § 5031 ...........................................................................................................12, 19

22 U.S.C. § 1650a .........................................................................................................13

28 U.S.C. § 1602 *et seq.* ...............................................................................................12

28 U.S.C. § 1604 ...........................................................................................................13

28 U.S.C. § 1605(a)(6)(A)...........................................................................................5, 13

28 U.S.C. § 1605(a)(6)(B) ...................................................................................13

28 U.S.C. § 1610(c) ....................................................................................... 1, 12

28 U.S.C. § 1963 ..................................................................................................13

8 *Del. C.* § 324 ................................................................................................20

**Rules**

Fed. R. Civ. P. 69 ........................................................................................ 12, 19

**Other Authorities**

United Nations Convention for the Recognition and Enforcement of Foreign Arbitral Awards
   (June 10, 1958), 21 U.S.T. 2517, 330 U.N.T.S. 38 ...............................................13

## INTRODUCTION

Plaintiff and Venezuela Judgment Creditor Gold Reserve Inc. ("Plaintiff" or "Gold Reserve") respectfully submits this opening brief in support of its motion, pursuant to Section 1610(c) of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1610(c), for an order conditionally authorizing the Clerk of the Court to issue a writ of attachment *fieri facias*, in accordance with the Federal Rules of Civil Procedure and the applicable provisions Delaware Code (if any), against the shares of Delaware corporation PDV Holding, Inc. ("PDVH"), which are owned by Petróleos de Venezuela S.A. ("PDVSA"), an alter ego of Defendant and Judgment Debtor Bolivarian Republic of Venezuela ("Venezuela").

Gold Reserve seeks to enforce a judgment issued by the U.S. District Court for the District of Columbia (the "D.D.C.") on November 20, 2015 (the "Judgment"), in favor of Gold Reserve and against Venezuela. The D.D.C. has determined that, pursuant to 28 U.S.C. § 1610(c), the requisite reasonable period of time has elapsed following entry of the Judgment so that Gold Reserve can proceed to attachment and execution. No motions or appeals are pending in the District of Columbia proceedings. Gold Reserve registered the Judgment with this Court on October 5, 2022 (*see* D.I. 1).

## SUMMARY OF ARGUMENT

There are at least five other creditors now seeking conditional writs of attachment *fieri facias* against the PDVH shares in Delaware ("Venezuela Judgment Creditors"):

1.  *OI European Group B.V. v. Bolivarian Republic of Venez.*, Case No. 19-mc-00290-LPS, D.I. 48 (D. Del. Feb. 19, 2021);

2.   *Northrop Grumman Ship Systems, Inc. v. The Ministry of Defense of the Republic of Venez.*, Case No. 20-mc-257-LPS, D.I. 3 (D. Del. Sept. 15, 2020);[1]

3.   *ACL1 Investments Ltd., et al. v. Bolivarian Republic of Venez.*, Case No. 21-mc-00046-LPS, D.I. 2 (D. Del. Nov. 22, 2021);

4.   *Rusoro Mining Ltd. v. Republic of Venez.*, Case No. 21-mc-00481-LPS, D.I. 2 (D. Del. Feb. 9, 2022); and

5.   *Koch Minerals SÀRL, et al. v. Bolivarian Republic of Venez.*, Case No. 22-mc-00156, D.I. 2 (D. Del. Oct. 7, 2022).

Gold Reserve seeks to be put in the same position as these other creditors. It has met all of the necessary requirements for a conditional writ of attachment *fieri facias*. As set forth in the papers of the Venezuela Judgment Creditors, PDVSA is, and at all relevant times has been, the alter ego of Venezuela. Further, if any of the Venezuela Judgment Creditors' respective motions are granted by the Court, such a determination will act as collateral estoppel with respect to the alter ego issue, and therefore also justify the granting of Gold Reserve's motion.

## STATEMENT OF FACTS

I.     ARBITRATION AWARD

On September 22, 2014, an arbitral Tribunal, constituted under the Additional Facility Rules of the International Centre for Settlement of Investment Disputes ("ICSID"), issued a unanimous award in favor of Gold Reserve against Venezuela. *See* Kirtland Decl., Ex. B (Mem. Op., D.D.C. Nov. 20, 2015), at 6. The Tribunal found, *inter alia,* "Venezuela in breach of Article II(2) of the [Canada-Venezuela] BIT by 'failing to accord fair and equitable treatment to Gold Reserve's investment.'" *Id.* In consequence, the Tribunal ordered Venezuela to pay Gold Reserve

---

[1] Northrop Grumman Ship Systems, Inc. is now known as Huntington Ingalls Inc. ("Huntington Ingalls").

compensation in the sum of $713,032,000, plus pre- and post-award interest, and $5 million in legal fees and costs. *Id.*

## II.      DISTRICT OF COLUMBIA JUDGMENT

On November 20, 2015, the D.D.C. granted Gold Reserve's petition to confirm the award and entered the Judgment in the amount of:

> $713,032,000.00, plus (i) pre-award interest from April 14, 2008, to September 22, 2014 (the date of the Award) at the United States Government Treasury Bill Rate, compounded annually, in the amount of $22,299,576, (ii) post-award interest on the total amount awarded, inclusive of pre-award interest, at a rate of LIBOR plus 2%, compounded annually, from September 22, 2014, until payment in full; and (iii) the $5 million in legal fees and costs awarded by the Tribunal.

Kirtland Decl., Ex. A, ¶ 4.

Venezuela appealed, and on June 21, 2017, the U.S. Court of Appeals for the District of Columbia Circuit dismissed the appeal. Kirtland Decl. ¶ 8. While the appeal was pending, on January 20, 2016, the D.D.C. granted Gold Reserve's motion filed pursuant to § 1610(c) of the FSIA, holding that the requisite "reasonable period of time" had elapsed following the entry of judgment, so that Gold Reserve could proceed to attachment and execution. *See* Kirtland Decl., Ex. C.

## III.     REGISTRATION OF JUDGMENT

On October 5, 2022, Gold Reserve registered the Judgment with this Court pursuant to 28 U.S.C. § 1963. *See* D.I. 1. The amount due, as of the date of Judgment, was $740,331,576.00. As of the present date, additional amounts are due in consequence of the post-award interest that has continued to accrue on the total amount of the award, inclusive of pre-award interest, at a rate of LIBOR plus 2%, compounded annually, from September 22, 2014, until payment in full. *See* Kirtland Decl. ¶ 7.

## IV.     THE CRYSTALLEX PROCEEDINGS

On August 9, 2018, this Court granted Crystallex International Corporation's ("Crystallex") motion for an attachment *fieri facias*, *see Crystallex Int'l Corp. v. Bolivarian Republic of Venez.* (the "*Aug. 2018 Crystallex Decision*"), 333 F. Supp. 3d 380, 386, D.I. 83 (D. Del. 2018), issued a writ, and authorized Crystallex to execute on the shares of stock that PDVSA, as alter ego of Venezuela, owns in PDVH. *Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*, Case No 17-mc-151-LPS, 2018 WL 4026738, at *1, D.I. 95 (D. Del. Aug. 23, 2018) (the "*Crystallex Writ*").

Applying the factors from *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba* ("*Bancec*"), 462 U.S. 611 (1983), this Court determined that "PDVSA is the alter ego of Venezuela," *Aug. 2018 Crystallex Decision*, 333 F. Supp. 3d at 411, and thus its assets (specifically PDVSA's shares of PDVH) are subject to attachment by a judgment creditor of Venezuela. *Id.* at 417. Specifically, this Court found that, *inter alia*:

- Venezuela regularly uses PDVSA's assets as its own, *id.* at 402, 406;

- Venezuela regularly ignores PDVSA's separate status, *id.* at 402, 406–07;

- Venezuela has deprived PDVSA of independence from close political control, *id.* at 402, 407–08;

- Venezuela dictates the severely discounted price at which PDVSA must sell its product to Venezuelan citizens and forces PDVSA to sell oil to third parties for no, or *de minimis*, consideration, *id.* at 402, 408–09;

- Venezuela causes PDVSA to achieve domestic social and political goals and to advance Venezuela's foreign policy goals, *id*. at 402, 409–10;

4

- PDVSA paid the administrative fees Venezuela incurred in connection with the arbitration with Crystallex, which amounted to around $249,000, *id.* at 410;

- Venezuela manipulates PDVSA's conversion of U.S. Dollars to Venezuelan Bolivars to leverage PDVSA's revenues for the sole benefit of Venezuela and to the detriment of PDVSA, *id.* at 402, 410–11; and

- Venezuela has designated PDVSA as an expropriating entity, thereby authorizing it to exercise a sovereign power, *id.* at 411.

This Court also held that it had subject matter jurisdiction over Venezuela and, because of its alter ego status, PDVSA under FSIA exception 28 U.S.C. § 1605(a)(6)(A). *Id.* at 414.

On July 29, 2019, the U.S. Court of Appeals for the Third Circuit (the "Third Circuit") affirmed this Court's decision that "(1) it had jurisdiction to order attachment against PDVSA's U.S.-based commercial assets, and (2) Crystallex could attach PDVSA's shares of PDVH to satisfy the judgment against Venezuela." *Crystallex Int'l Corp. v. Bolivarian Republic of Venez.* (the "*Crystallex Appeal*"), 932 F.3d 126, 134 (3d Cir. 2019).

## V.    THE OTHER VENEZUELA JUDGMENT CREDITORS

On November 4, 2019, OI European Group B.V. ("OIEG") moved for a writ of attachment *fieri facias* against the shares of PDVH, arguing that Venezuela is collaterally estopped from contradicting this Court's August 2018 ruling that PDVSA is Venezuela's alter ego. The Court denied OIEG's motion, ruling that

> collateral estoppel does not apply, [and] any creditor seeking to place itself in a situation similar to Crystallex will have to prove that PDVSA is and/or was the Republic's alter ego on whatever pertinent and applicable date. In attempting to meet this burden, any creditor may be able to find support (perhaps strong support) in the record created in the Crystallex Asset Proceeding and the finding reached (and affirmed) there. . . From all of the

5

> foregoing, it follows that a creditor like [OIEG] must prove, by a preponderance of the evidence, that PDVSA is the alter ego of Venezuela on and as of the pertinent date.

*Crystallex Int'l Corp. v. PDV Holding Inc. (the "Dec. 2019 Crystallex Decision")*, 2019 WL 6785504, at *8, D.I. 154 (D. Del. Dec. 12, 2019).

On January 15, 2021, in ruling on Venezuela's Rule 60(b)(6) motion, this Court held that the pertinent time for determining alter ego status is "the period between the filing of the motion seeking a writ of attachment and the subsequent issuance and service of that writ." *Crystallex Int'l Corp. v. Bolivarian Republic of Venez. (the "Jan. 2021 Crystallex Decision")*, 2021 WL 129803, at *6, D.I. 234 (D. Del. Jan. 14, 2021). Shortly thereafter, on February 19, 2021, OIEG filed a *renewed* motion for writ of attachment *fieri facias*, in which it preserved its prior argument but also presented new arguments and evidence, in accord with the *Jan. 2021 Crystallex* Decision. Meanwhile, on September 15, 2020, Huntington Ingalls filed its motion for writ of attachment *fieri facias*, likewise arguing that PDVSA is Venezuela's alter ego.

On April 22, 2021, this Court held an evidentiary hearing in which it heard alter ego arguments from OIEG and Huntington Ingalls. On May 4, 2022, this Court certified for interlocutory appeal the "pertinent time" issue, specifically:

> Whether the pertinent time for conducting an alter ego analysis with respect to the Bolivarian Republic of Venezuela and Petróleos de Venezuela, S.A. is: (i) the period between a judgment creditor filing a motion seeking a writ of attachment and the subsequent issuance and service of the writ, (ii) the time of the injury that gave rise to the judgment creditor's judgment, or (iii) some other time.

*OI European Group B.V. v. Bolivarian Republic of Venez.*, Case No. 19-mc-290, Mem. Order, D.I. 114 (D. Del. May 4, 2022). On June 27, 2022, the Third Circuit denied the request for interlocutory appeal.

In the meantime, additional judgment creditors moved for writs of attachment *fieri facias*:

- ACL1 Investments Ltd., ACL2 Investments Ltd., and LDO (Cayman) XVIII Ltd ("ACL1") filed their motion on November 22, 2021, D.I. 2;

- Rusoro Mining Ltd. ("Rusoro") filed its motion on February 9, 2022, D.I. 2; and

- Koch Minerals SÀRL and Koch Nitrogen International SÀRL ("Koch") filed their motion on October 7, 2022, D.I. 2.

The motions for writ of attachment *fieri facias* filed by OIEG, Huntington Ingalls, and ACL1 are fully briefed and pending. Briefing on Rusoro's motion will be completed on November 14, 2022, under the current schedule. PDVSA has intervened in *Koch* and requested that briefing be stayed pending resolution of the *OIEG*, *ACL1*, *Huntington Ingalls*, and *Rusoro* motions.

## VI.   EVENTS BETWEEN AUGUST 2018 AND APRIL 2021

The Venezuela Judgment Creditors included in their respective motions extensive evidence, summarized below, showing that PDVSA remained an alter ego of Venezuela between August 2018 and April 2021. Gold Reserve incorporates and relies upon this evidence.

- Venezuela continued to exercise substantial day-to-day control over PDVSA. (*Rusoro*, D.I. 4-1 at 12-17, 22-25; *OIEG*, D.I. 49 at 9-14, 16-18; *ACL1*, D.I. 3 at 6-8, 9; *Huntington Ingalls*, D.I. 4 at 14-17; *Koch*, D.I. 5-1 at 6-11).

  o   Between August 2018 and January 2019, the U.S. continued to recognize Mr. Maduro as the legitimate president of Venezuela. Over this period, the Maduro regime's treatment of PDVSA as coterminous with the Venezuelan State continued. (*Huntington Ingalls*, D.I. 4 at 14; *ACL1*, D.I. 3 at 5).

  o   In January 2019, the United States' recognized Mr. Guaidó as president in January of 2019. Mr. Guaidó's government does not actually have the physical ability to control as much of PDVSA as Mr. Maduro's.

Nevertheless, following Mr. Guaidó's rise as president, his government has continued to identify PDVSA as part and parcel of the Venezuelan State. (*Huntington Ingalls*, D.I. 4 at 14-15; *ACL1*, D.I. 3 at 5-6).

o   On February 5, 2019, the National Assembly approved and adopted a Statute to Govern a Transition to Democracy to Reestablish the Validity of the Constitution of the Republic of Venezuela. The statute "specifically empowered Guaidó to 'appoint an ad hoc Managing Board' of PDVSA 'to exercise PDVSA's rights as a shareholder of PDV Holding.'" (*Rusoro*, D.I. 4-1 at 12; *OIEG*, D.I. 49 at 9). However, in practice, Maduro has continued to exercise control over PDVSA. (*Rusoro*, D.I. 4-1 at 12-13; *OIEG*, D.I. 49 at 10).

o   In March 2019, PDVSA, acting entirely through Maduro-regime officers, announced the opening of an office in Moscow. (*Rusoro*, D.I. 4-1 at 13; *OIEG*, D.I. 49 at 10).

o   In September 2019, a Maduro-appointed oil minister moved PDVSA's Lisbon office to Moscow to avoid the effect of U.S. and European sanctions. (*Rusoro*, D.I. 4-1 at 13; *OIEG*, D.I. 49 at 10; *ACL1*, D.I. 3 at 7).

o   In February 2020, CITGO Petroleum released a statement that Mr. Maduro's regime utilized "its control of PDVSA in Venezuela" and Venezuela's military to take possession of CITGO Petroleum crude oil that was meant for delivery overseas. (*Rusoro*, D.I. 4-1 at 13-14).

o   On May 31, 2020, Mr. Maduro announced on national television that PDVSA would increase consumer prices. During that same briefing, he

specified how PDVSA would sell gasoline and to whom. A press release published on PDVSA's website advised that the price of gasoline would increase "pursuant to President Maduro's announcement." Consumer prices were increased by PDVSA pursuant to this instruction. (*Rusoro*, D.I. 4-1 at 15; *OIEG*, D.I. 49 at 12; *ACL1*, D.I. 3 at 6).

- o In May 2020, acting through its European subsidiary PDVSA Europa, PDVSA sold a significant and valuable stake in Nynas, a Swedish oil refinery. The sale closed; corporate power was in fact exercised to cause the disposition of a corporate asset to a third party. After the fact, the ad hoc board criticized the sale as "harm to the nation's wealth supported by agents of the Maduro regime," and concluded that the ad hoc board "was not informed of the company's sale of a 35% stake in Swedish refiner Nynas." That the sale could have been effected over its objection – and without its knowledge – shows that actual state control of PDVSA has not changed since 2018. (*Rusoro*, D.I. 4-1 at 15-16; *OIEG*, D.I. 49 at 12).

- Venezuela continued to use PDVSA property as its own. (*Rusoro*, D.I. 4-1 at 17-20; *OIEG*, D.I. 49 at 13-14; *ACL1*, D.I. 3 at 6, 8; *Huntington Ingalls*, D.I. 4 at 17; *Koch*, D.I. 5-1 at 22-24).

  - o In March 2019, Venezuela's Minister of Foreign Affairs, Jorge Arreaza, traveled abroad on board a PDVSA plane. (*Rusoro*, D.I. 4-1 at 17-18; *OIEG*, D.I. 49 at 13; *ACL1*, D.I. 3 at 6).

  - o In early 2020, in identifying numerous PDVSA aircraft as blocked property, OFAC stated that "[i]n late Summer 2019, Venezuelan Oil Minister Manuel

Salvador Quevedo Fernandez . . . attended an OPEC meeting in the United Arab Emirates and utilized the PdVSA aircraft Falcon 200EX (YV3360)." (*Rusoro*, D.I. 4-1 at 17-18; *OIEG*, D.I. 49 at 13; *ACL1*, D.I. 3 at 6).

o Venezuelan officials (appointed by Maduro) traveled to Trinidad & Tobago aboard a PDVSA aircraft. (*Rusoro*, D.I. 4-1 at 18; *OIEG*, D.I. 49 at 13; *ACL1*, D.I. 3 at 6).

o On March 3, 2020, ABC Spain reported that Venezuela (via Mr. Maduro) was gifting "PDVSA" petroleum to Cuba, despite Venezuela's own fuel shortage. (*Rusoro*, D.I. 4-1 at 20; *OIEG*, D.I. 49 at 14).

o In July 2020, El Nacional reported that PDVSA gasoline was being loaded onto Cuban oil tankers docked at a PDVSA refinery, which sources indicated were scheduled to depart for Cuba the next week. (*Rusoro*, D.I. 4-1 at 20; *OIEG*, D.I. 49 at 14).

• Venezuela continued to use PDVSA as an extension of the state's media. (*Rusoro*, D.I. 4-1 at 20; *OIEG*, D.I. 49 at 14-15).

o PDVSA's website continues to list three "Strategic Objectives," one of which is to "[s]upport the geopolitical positioning of Venezuela internationally." (*Rusoro*, D.I. 4-1 at 20; *OIEG*, D.I. 49 at 14).

o PDVSA's social media accounts are the state's mouthpiece, regularly trumpeting its policy and propaganda. Since December 11, 2020, PDVSA's official Twitter account has retweeted at least 460 of Mr. Maduro's tweets. PDVSA's Twitter account also tweets and retweets support for state initiatives, political actors and policies. For example, dozens of tweets and

retweets support the Anti-Blockade Law enacted in late 2020 by Mr. Maduro's legislature (which, among other things, permits the Venezuelan government to enter into oil agreements and privatize PDVSA subsidiaries). (*Rusoro*, D.I. 4-1 at 20, 24; *OIEG*, D.I. 49 at 14-15; *ACL1*, D.I. 3 at 7).

- Venezuela remains the beneficiary of PDVSA's conduct. (*ACL1*, D.I. 3 at 7, 9; *Rusoro*, D.I. 4-1 at 17-20).

- The "U.S. Sanctions Regime" treated PDVSA as Venezuela. (*Rusoro*, D.I. 4-1 at 20-22; *OIEG*, D.I. 49 at 15-16; *Huntington Ingalls*, D.I. 4 at 17-20).

  o In the Statement of Interest filed in *Crystallex*, the U.S. admits that its goal in calling for restraint as to an auction of PDVH shares is to forestall the perception that the Guaidó administration cannot protect Venezuela's assets. Statement of Interest of the United States of America, *Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*, No. 1:17-mc-00151-LPS (D. Del. July 16, 2020), D.I. 212-1 at 3. (*Huntington Ingalls*, D.I. 4 at 17-18).

  o The same understanding is clearly reflected in the U.S.' sanctions applicable to Venezuela, which define the "Government of Venezuela" to include PDVSA. *See, e.g.*, Executive Order No. 13857, 84 Fed. Reg. 509, 509–10 (Jan. 25, 2019) (amending the definition of "Government of Venezuela" in prior Executive Orders explicitly to include PDVSA) and Executive Order No. 13884, 84 Fed. Reg. 38843, 38843–45 (Aug. 5, 2019) (blocking the property of "the Government of Venezuela," which includes PDVSA). (*Rusoro*, D.I. 4-1 at 20-22; *Huntington Ingalls*, D.I. 4 at 17-18).

## VII.    EVENTS BETWEEN APRIL 2021 AND OCTOBER 2022

On October 13, 2022, the Venezuela Judgment Creditors (less Koch, which filed its motion for attachment *fieri facias* only days before), PDVSA, and Venezuela submitted a status report confirming, as PDVSA succinctly summarized, "that no party believes or will argue, in these proceedings or any other, that, between the date of the evidentiary proceedings the Court held in April 2021 and today, there has been any material change to any fact relevant to the factual determination(s) the Court must make with respect to the pending alter-ego issues." *OI European Group B.V. v. Bolivarian Republic of Venez.*,Case No. 19-mc-290, Joint Status Report, D.I. 119 (D. Del. Oct. 13, 2022).

## ARGUMENT

Gold Reserve moves this Court for a conditional order *fieri facias* executing upon and attaching the shares of PDVSA, Venezuela's alter ego, in PDVH, a Delaware holding company, to satisfy Gold Reserve's Judgment against Venezuela pursuant to Rule 69 of the Federal Rules of Civil Procedure, 10 *Del. C.* § 5031, and 28 U.S.C. § 1610. *See, e.g., Aug. 2018 Crystallex Decision*"), 333 F. Supp. 3d 380, D.I. 83 (D. Del. 2018); *Crystallex Appeal*, 932 F.3d 126, 134 (3d Cir. 2019); *see also Conn. Bank of Commerce v. Republic of Congo*, 440 F. Supp. 2d 346, 349 n.3 (D. Del. 2006) ("The order directing the Prothonotary to issue the writ of garnishment was issued in accordance with 28 U.S.C. § 1610(c)."). As set forth herein, Gold Reserve has satisfied all requirements for such an attachment.

## I.    THE FSIA JURISDICTIONAL REQUIREMENTS HAVE BEEN MET

### A. An Exception to Jurisdictional Immunity Applies

The FSIA, 28 U.S.C. § 1602 *et seq.*, "establishes a comprehensive framework for determining whether a court in this country, state or federal, may exercise jurisdiction over a foreign state." *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 610 (1992). The FSIA is the

"sole basis for obtaining jurisdiction over a foreign state in our courts." *Argentine Republic v. Amerada Hess Shipping Corp.,* 488 U.S. 428, 434 (1989). "Under the [FSIA], a 'foreign state shall be immune from the jurisdiction of the courts of the United States and of the States' unless one of several statutorily defined exceptions applies." *Weltover,* 504 U.S. at 610–11 (quoting 28 U.S.C. § 1604). Hence, "a district court has subject matter jurisdiction over a suit against a foreign state if—and only if—the plaintiffs claim falls within a statutorily enumerated exception." *Odhiambo v. Republic of Kenya*, 764 F.3d 31, 34 (D.C. Cir. 2014).

Here, Venezuela is not immune, at minimum, pursuant to 28 U.S.C. § 1605(a)(6)(B), which provides that a foreign state does not enjoy jurisdictional immunity in any case brought to confirm an arbitral award that "is or may be governed by a treaty or other international agreement in force in the United States calling for the recognition and enforcement of arbitral awards." This is because the Judgment confirms an arbitral award that is governed by the United Nations Convention for the Recognition and Enforcement of Foreign Arbitral Awards (June 10, 1958), 21 U.S.T. 2517, 330 U.N.T.S. 38 (the "New York Convention"), which is in force in the United States. Because Gold Reserve established an exception to sovereign immunity and obtained a federal judgment pursuant to 22 U.S.C. § 1650a and 28 U.S.C. § 1605(a)(6), no further exceptions are necessary in order to register and enforce the Judgment in this Court. *See Crystallex Appeal*, 932 F.3d at 137 ("when a party establishes that an exception to sovereign immunity applies in a merits action that results in a federal judgment—here, the exception for confirming arbitration awards, 28 U.S.C. § 1605(a)(6)—that party does not need to establish yet another exception when it registers the judgment in another district court under 28 U.S.C. § 1963 and seeks enforcement in that court.").

## B. The Property At Issue Meets the Requirements for Attachment and Execution

"[T]he FSIA codifies the common-law rule that property of a foreign state in the United States is presumed immune from attachment and execution. To overcome the presumption of

immunity, the plaintiff must identify the particular foreign-state property he seeks to attach and then establish that it falls within a statutory exception." *Rubin v. The Islamic Republic of Iran*, 637 F.3d 783, 796 (7th Cir. 2011), as corrected (Apr. 1, 2011).

Here, Section 1610(a)(6) of the FSIA provides such an exception to immunity with respect to the PDVH shares given that this Court has already held that they consist of (1) "property in the United States of a foreign state … used for a commercial activity in the United States" and, "therefore, may be attached (and executed on) as property of Venezuela's alter ego." *Aug. 2018 Crystallex Decision*, 333 F.Supp.3d at 417, D.I. 83;[2] (2) there is no dispute that Gold Reserve's Judgment "is based on an order confirming an arbitral award rendered against" Venezuela,[3] and there is no suggestion that attachment and execution against the PDVH shares would "be inconsistent with any provision in the arbitral agreement" between Gold Reserve and Venezuela; and, (3) the D.D.C. has already held that the "reasonable period of time" following the entry of judgment required by Section 1610(c) has elapsed. *See* Kirtland Decl., Ex. C.

## II.   PDVSA IS AND AT ALL RELEVANT TIMES HAS BEEN VENEZUELA'S ALTER EGO

In January 2021, this Court ruled that the "pertinent time" for an alter ego determination is "the period between the filing of the motion seeking a writ of attachment and the subsequent issuance and service of that writ." *Jan. 2021 Crystallex Decision,* 2021 WL 129803, at *6, D.I.

---

[2] The Third Circuit also determined that post-August 2018, with OFAC sanctions in place, "the shares can still be used by PDVSA to run its business as an owner, to appoint directors, approve contracts, and to pledge PDVH's debts for its own short-term debt." *See Crystallex Appeal*, 932 F.3d at 151.

[3] The Third Circuit held in the *Crystallex Appeal* that "so long as PDVSA is Venezuela's alter ego under *Bancec*, the District Court ha[s] the power to issue a writ of attachment on [PDVSA]'s non-immune assets to satisfy the judgment against the country." *Crystallex Appeal,* 932 F.3d at 139.

234.[4] Given this ruling, Gold Reserve joins the Venezuelan Judgment Creditors in seeking to attach the PDVH shares owned by PDVSA in satisfaction of judgments against Venezuela.

The motions filed by each creditor establishes that PDVSA is Venezuela's alter ego at the "pertinent time."[5] Although the arguments vary slightly, the evidence on which each creditor relies is the same or substantially the same, and not specific to the particular creditor, or its judgment. As such, Gold Reserve incorporates and relies upon the evidence and arguments made by each of the Venezuela Judgment Creditors. Specifically, as set forth in the Venezuela Judgment Creditors' motions,[6] and summarized above, the substantial weight of the evidence demonstrates that the alter ego relationship between Venezuela and PDVSA has not changed during the period (a) between this Court's determinations in the *Aug. 2018 Crystallex Decision*; and April 2021; and (b) with respect to the period between the date of the evidentiary proceedings the Court held in April 2021 and the present date. With respect to the latter, it has been confirmed by all parties on October 13, 2022, including Venezuela and PDVSA, that that there has not "been any material change to any fact relevant to the factual determination(s) the Court must make with respect to the pending alter-ego issues regarding the relationship between PDVSA and Venezuela." *OI European Group B.V. v. Bolivarian Republic of Venez.*, Case No. 19-mc-290, Joint Status Report, D.I. 119 (D. Del. Oct. 13, 2022).

---

[4] Gold Reserve joins the Venezuela Judgment Creditors in arguing, and preserving for appeal, the argument that, applying principles of collateral estoppel, the *Aug. 2018 Crystallex Decision* should be dispositive of the alter ego determination because the pertinent time for such a determination should be the date of incurred liability or injury, and given that Gold Reserve's injury, award and judgment all predated and existed as of the *Aug. 2018 Crystallex Decision. See Rusoro*, D.I. 4-1 at 27-28 (injury); *OIEG*, D.I. 49 at 24-25 (injury); *ACL1*, D.I. 3 at 14-15 (injury); *Huntington Ingalls*, D.I. 4 at 12-13 (liability incurred); *Koch*, D.I. 5-1 at 15-18 (liability incurred).
[5] *Rusoro*, D.I. 4-1 at 25-33; *OIEG*, D.I. 49 at 23-33; *ACL1*, D.I. 3 at 10-15; *Huntington Ingalls*, D.I. 4 at 11-20; *Koch*, D.I. 5-1 at 12-28.
[6] *Rusoro*, D.I. 4-1 at 28-33; *OIEG*, D.I. 49 at 25-33; *ACL1*, D.I. 3 at 10-15; *Huntington Ingalls*, D.I. 4 at 13-20; *Koch*, D.I. 5-1 at 19-28).

### III.  IN THE ALTERNATIVE, THIS COURT'S FORTHCOMING DECISION WOULD COLLATERALLY ESTOP VENEZUELA AND PDVSA ON THE ALTER EGO ISSUE

The Court's findings as to alter ego, in any forthcoming decision on the pending Venezuela Judgment Creditor motions, would also collaterally estop Venezuela and PDVSA on the alter ego issue.

Collateral estoppel, or issue preclusion, "bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Nat'l Med. Imaging, LLC v. Ashland Funding LLC*, 648 F. App'x 251, 255 (3d Cir. 2016) (citing *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008)). Collateral estoppel applies when "(1) the issue sought to be precluded is the same as that involved in the prior action; (2) that issue was actually litigated; (3) it was determined by a final and valid judgment; and (4) the determination was essential to the prior judgment." *United States ex rel. Doe v. Heart Sol., PC*, 923 F.3d 308, 316 (3d Cir. 2019) (quoting *In re Graham*, 973 F.2d 1089, 1097 (3d Cir. 1992)). Collateral estoppel may be used offensively by a plaintiff that seeks to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action against another party. *See Bouriez v. Carnegie Mellon Univ*., 430 F. App'x 182, 186 (3d Cir. 2011); *see also Harrison v. Soroof Int'l, Inc.*, 320 F. Supp. 3d 602, 625 (D. Del. 2018) (internal citations omitted).

#### 1.  The Issue Sought To Be Precluded Is The Same

"[I]ssues are identical for [issue preclusion] purposes where 'the issues presented by [the current] litigation are in substance the same as those resolved' in the previous litigation." *Nat'l Med. Imaging, LLC v. Ashland Funding LLC*, 648 F. App'x 251, 256 (3d Cir. 2016) (quoting *Montana v. United States*, 440 U.S. 147, 155 (1979)). The "facts of the two cases do not need to be identical so long as any factual differences have no 'legal significance' in 'resolving the issues

presented in both cases.'" *Id.* (quoting *United States v. Stauffer Chem. Co.*, 464 U.S. 165, 172 (1984)). Here, the issue before this Court is whether PDVSA is the alter ego of Venezuela at the "pertinent time," i.e. in "the period between the filing of the motion seeking a writ of attachment and the subsequent issuance and service of that writ." This issue is identical in each of the pending alter ego motions, including Gold Reserve's. Accordingly, the first element of issue preclusion is satisfied.

### 2.    The Issue Is Being Actually Litigated

The second element of issue preclusion also would be satisfied given that the alter ego issues have been, and are being, substantially litigated by the parties in this Court. *See, e.g.*, *Aug. 2018 Crystallex Decision*, 333 F. Supp. 3d at 406, 417, D.I. 83; *Crystallex Writ*, 2018 WL 4026738, at *1, D.I. 95; *Crystallex Appeal*, 932 F.3d at 134 ("After several rounds of briefing and hearings, the District Court concluded that PDVSA was Venezuela's 'alter ego' under *Bancec*."). This Court has devoted substantial resources to the question, and made detailed findings of fact, none of which were specific to Crystallex's underlying claim, and all of which would apply generally to creditors, like Gold Reserve, which have money judgments against Venezuela. This Court's *Aug. 2018 Crystallex Decision* and the *Crystallex Writ* were affirmed by the Third Circuit. *See Crystallex Appeal*, 932 F.3d at 126.

Both PDVSA and Venezuela have had the opportunity to oppose, and have opposed the pending alter ego motions There have been multiple rounds of briefing on the issue including a motion filed by each of the Venezuela Judgment Creditors, with two motions and a motion for reconsideration filed by OIEG. An evidentiary hearing was held in April 2021, in which this issue was argued. And, on October 13, 2022, the Venezuela Judgment Creditors (excluding Koch, which had filed its motion just days prior), PDVSA and Venezuela submitted a joint status report "confirming that no party believes or will argue, in these proceedings or any other, that, between

the date of the evidentiary proceedings the Court held in April 2021 and today, there has been any material change to any fact relevant to the factual determination(s) the Court must make with respect to the pending alter-ego issues."

### 3. The Issue Will Be Determined By A Final And Valid Judgment

"[A]n issue is conclusively established in future litigation through the doctrine of collateral estoppel only when it is determined by a final judgment." *Anderson v. Comm'r*, 698 F.3d 160, 166 (3d Cir. 2012). When determining whether a judgment is final, courts consider "whether controlling facts or legal principles have changed significantly since the [prior] judgment." *Montana v. United States*, 440 U.S. 147, 155 (1979); *see also Duvall v. Att'y. Gen. of United States*, 436 F.3d 382, 391 (3d Cir. 2006) ("[Collateral estoppel] will not preclude relitigation of the issue when there is . . . a material intervening change in governing law[.]"). Under Third Circuit precedent, "the concept of finality for purposes of collateral estoppel does not require the entry of a judgment [sic] final in the sense of being appealable." *Burlington N. R. Co. v. Hyundai Merch. Marine Co.*, 63 F.3d 1227, 1233 n.8 (3d Cir. 1995) (quoting *In re Brown*, 951 F.2d 564, 569 (3d Cir. 1991)); *see also Brown*, 951 F.2d at 569 ("Finality may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again.").

Here, any ruling which this Court makes with regards to the arguments put forth by the Venezuela Judgment Creditors as to PDVSA's alter ego status from August 2018 to October 2022, will presumptively be final and valid, and thus would estop Venezuela and PDVSA from denying that they are alter egos.

### 4. The Determination Of The Issue Is Essential

The fourth element of collateral estoppel—whether the determination is essential to the prior judgment—requires the court to make a distinction between findings that may serve as

"background" for a court's ultimate conclusions versus whether such findings "bear directly on the ultimate question" at issue. *Caver v. City of Trenton*, 420 F.3d 243, 259 (3d Cir. 2005); *see also Tauro v. Allegheny Cty.*, 371 F. App'x 345, 347 (3d Cir. 2010); *Nat'l R.R. Passenger Corp. v. Pennsylvania Pub. Util. Comm'n*, 288 F.3d 519, 527 (3d Cir. 2002); *In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008).

Here, the Court's "primary ruling" in the *Crystallex* proceedings "was that PDVSA is Venezuela's 'alter ego' under *Bancec*." *Crystallex Appeal*, 932 F.3d at 135. Further, this Court "concluded that Venezuela's control over PDVSA was sufficient to allow Crystallex to attach PDVSA's shares of PDVH in satisfaction of its judgment against [Venezuela]." *Id.* at 132. These determinations were essential to the prior judgment. Any forthcoming alter ego determination, will likewise be essential to a judgment in favor of the Venezuela Judgment Creditors.

## IV.    PDVH'S SHARES MAY BE ATTACHED UNDER DELAWARE LAW

Because each of the jurisdictional requirements under the FSIA have been met, Delaware law permits this Court to grant the requested attachment. Pursuant to Rule 69, a money judgment entered by a federal court "is enforced by a writ of execution, unless the court directs otherwise," and the "procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies." Fed. R. Civ. P. 69(a). Under Delaware law, judgment creditors may execute on their judgments by garnishment, which is "the attachment of a defendant's property in the hands of a third party." *UMS Partners, Ltd. v. Jackson*, 1995 WL 413395, at *5 (Del. Super. Ct. June 15, 1995). Furthermore, "[t]he plaintiff in any judgment in a court of record . . . may cause an attachment, as well as any other execution, to be issued thereon, containing an order for the summoning of the garnishees, to be proceeded upon and returned as in cases of foreign attachment." 10 *Del. C.* § 5031; *see also Wilmington Tr. Co. v. Barron*, 470 A.2d

257, 263 (Del. 1983) ("The authority for this is founded upon 10 *Del. C.* § 5031."). Finally, Delaware law provides that a creditor may attach a debtor's shares in a Delaware corporation in order to satisfy the debt owed. *See* 8 *Del. C.* § 324.

**V.     OFAC SANCTIONS DO NOT PREVENT PLAINTIFF'S REQUESTED RELIEF**

As this Court has ruled, it may grant the conditional relief requested herein without conflicting with OFAC sanctions. *OI European Group B.V. v. Bolivarian Republic of Venez.*, Opinion, Case No. 19-mc-290, D.I. 109 (D. Del. Mar. 2, 2022) ("In sum, the OFAC sanctions regime does not require a specific license before the Court may enter an order authorizing the eventual issuance of a writ of attachment.").

## <u>CONCLUSION</u>

For the reasons set forth above, Gold Reserve respectfully requests that this Court enter an order pursuant to FSIA Section 1610(c) authorizing the Clerk of the Court to issue the proposed conditional writ of attachment *fieri facias* to PDVH and granting such other and further relief as this Court deems just and proper.

[intentionally left blank, signature block follows]

Respectfully submitted,

/s/ Matthew P. Ward

OF COUNSEL:                                    Matthew P. Ward (Del. Bar No. 4471)
                                               Nicholas T. Verna (Del. Bar No. 6082)
Matthew H. Kirtland (*pro hac vice forthcoming*)   WOMBLE BOND DICKINSON (US) LLP
NORTON ROSE FULBRIGHT US LLP                   1313 North Market Street, Suite 1200
799 9th Street NW, Suite 1000                  Wilmington, DE 19801
Washington, DC 20001                           Tel: (302) 252-4320
Tel: (202) 662-0200                            Matthew.Ward@wbd-us.com
matthew.kirtland@nortonrosefulbright.com       Nick.Verna@wbd-us.com

Katherine G. Connolly (*pro hac vice forthcoming*)
NORTON ROSE FULBRIGHT US LLP                   *Attorneys for Plaintiff Gold Reserve Inc.*
555 California Street, Suite 3300
San Francisco, CA  94104
Tel: (628) 231-6816
katie.connolly@nortonrosefulbright.com

Dated: October 20, 2022